Angiolillo, J.P.
(dissenting). Following a brief conversation about an upcoming family Easter dinner party, the defendant brutally bludgeoned Jeanette Carlucci multiple times with a baseball bat, causing her death. By the defendant’s own sworn account at trial, immediately before he delivered the first blow, Carlucci responded to his plea that they cancel the dinner party with a single question, “are you crazy?,” uttered “in a normal tone” of voice. A jury of 12 determined that the defendant’s homicidal act was not “an understandable human response deserving of mercy” (People v Casassa, 49 NY2d 668, 680-681 [1980]) and rejected his affirmative defense of extreme emotional disturbance. We would uphold the jury’s verdict as not against the weight of the evidence and affirm the conviction. Accordingly, we respectfully dissent.
Under the statutory scheme, a defendant who proves the elements of the affirmative defense of extreme emotional disturbance by a preponderance of the evidence establishes a mitigating circumstance reducing murder to manslaughter in the first degree (see Penal Law §§ 25.00 [2]; 125.20 [2]; 125.25 [1] [a]; People v Diaz, 15 NY3d 40, 44-45 [2010]; People v Patterson, 39 NY2d 288, 303 [1976]). “The influence of an extreme emotional disturbance explains the defendant’s intentional action, but does not make the action any less intentional” (People v Patterson, 39 NY2d at 302; see Penal Law § 125.20 [2]; People v Gonzalez, 1 NY3d 464, 469 [2004]). The defense “does not absolve the defendant of criminal responsibility, but allows him/her to demonstrate the existence of mitigating factors which indicate that he/she should be punished less severely” (People v Cass, 18 NY3d 553, 561 n 4 [2012] [internal quotation marks omitted]; *93 see People v Roche, 98 NY2d 70, 75 [2002]; People v Harris, 95 NY2d 316, 318 [2000]; People v Casassa, 49 NY2d at 680-681).
To establish this affirmative defense, a defendant is required to prove two elements by a preponderance of the evidence (see People v Roche, 98 NY2d at 75).
“First, it must be determined that the defendant actually acted under the influence of extreme emotional disturbance, a subjective determination. Second, there must be a reasonable explanation for the defendant’s emotional disturbance, determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be, an objective determination which is to be made by viewing the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, however inaccurate that perception may have been” CPeople v Cass, 18 NY3d at 561 [internal quotation marks and citation omitted]; see People v Casassa, 49 NY2d at 678-679).
The first, subjective element, is established with evidence that a defendant actually suffered from “a mental infirmity not rising to the level of insanity at the time of the homicide” (People v Roche, 98 NY2d at 75; see People v Patterson, 39 NY2d at 302) which was “not contrived or [a] sham” (People v Casassa, 49 NY2d at 679). Here, the defendant’s expert witness, Dr. Alan Tuckman, and the People’s expert witness in rebuttal, Dr. Angela Hegarty, both testified that the defendant had suffered from a longstanding anxiety disorder in the years prior to the homicide. However, these experts advanced opposite opinions as to whether the defendant, at the time he committed the homicide, was actually suffering from, and acting under the influence of, an extreme emotional disturbance which was not contrived or a sham, and the experts each stated the evidentiary basis for their respective opinions. Under the circumstances, the jury was free to accept or reject the opinion of either expert in determining whether the defendant proved the first, subjective element of his defense (see e.g. People v Kwas, 96 AD3d 877 [2012]).
However, even assuming that the defendant proved the first, subjective element of his defense, in our view, the evidence preponderated against establishment of the second element, which required an “objective determination” that there was a *94 “reasonable explanation” for the defendant’s extreme emotional disturbance at the time he committed the homicide, determined from the viewpoint of a person in his situation (People v Cass, 18 NY3d at 561 [internal quotation marks omitted]; see People v Roche, 98 NY2d at 76; People v Harris, 95 NY2d at 319; People v Casassa, 49 NY2d at 679).
With respect to the events immediately preceding the homicide, the defendant testified that he was awakened by a noise in the house and went to check on it, taking a baseball bat with him for protection. When he found that the house was secure, he put the bat down and paced around the kitchen for an hour- and-a-half because he was “worked up” about hosting the Easter dinner party and other things, including money problems. Carlucci, who was in the bedroom next to the kitchen, asked, “[W]hat are you doing? You have to get ready for the party.” The defendant replied, “I think we have to cancel the party.” Carlucci responded, “[A]re you crazy?” She spoke “in a normal tone, not a mean tone or anything else.” The defendant thereupon repeatedly yelled, “I can’t do this anymore,” grabbed the bat, and started beating her. In further explanation, the defendant testified that he had been thinking of all his problems, he “couldn’t do this party,” it was “impossible,” and he “lost control.” Dr. Tuckman opined that the defendant’s emotionally weakened state from his anxiety disorder “probably” triggered his explosion when Carlucci suggested that they could not cancel the party.
Whether the defendant’s explanation or excuse was objectively reasonable must be determined by viewing it from the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them (see People v Cass, 18 NY3d at 561), including the evidence of his serious emotional problems, anxiety disorder, money and business problems, guilt about the breakup of his marriage and cohabitation with the victim, and emotional difficulty in facing family members at the upcoming party. Fully crediting this evidence and viewing the circumstances as the defendant perceived them, the jury was entitled to reject the defendant’s proffered excuse for his extreme emotional disturbance at the time of the murder as unreasonable and not warranting mitigation (see People v White, 79 NY2d 900, 903 [1992]; People v Casassa, 49 NY2d at 680; People v Ludwigsen, 48 AD3d 484 [2008]; People v Yong Ho Han, 200 AD2d 780, 781 [1994]; People v Murden, 190 AD2d 822, 822-823 [1993]). “Sitting as the thirteenth juror” in this *95 appeal (People v Danielson, 9 NY3d 342, 349 [2007]), we find that the jury properly gave the evidence the weight it should be accorded and that the verdict is supported by the weight of the evidence (see CPL 470.15 [5]; People v Bleakley, 69 NY2d 490, 495 [1987]).
Under the second element, it is the reasonableness of the “explanation or excuse” for the defendant’s extreme emotional disturbance (People v McKenzie, 19 NY3d 463, 466 [2012]; see People v Casassa, 49 NY2d at 679), not the reasonableness of the emotional disturbance itself, which must be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be, however inaccurate his perception may have been (see People v Cass, 18 NY3d at 561). Here, our colleagues in the majority posit that the defendant’s long-standing emotional disorder culminated in a fragile mental state which did not arise from the spontaneous situation involving the brief conversation about the upcoming dinner party, while they acknowledge the undisputed fact that the defendant’s emotionally disturbed response was “triggered when Carlucci rebuffed his suggestion that they cancel the Easter dinner party” (supra at 90). Fully accepting that formulation, we cannot subscribe' to the next step in the majority’s analysis which is essential to the establishment of the objective element, namely, that the defendant’s testimony regarding the Easter dinner party established an objectively reasonable excuse for his extreme emotional disturbance from the viewpoint of a person in his position. An objectively reasonable excuse for the extreme emotional disturbance is not one which is “so peculiar to [the defendant] that it was unworthy of mitigation” (People v Casassa, 49 NY2d at 680), or one which merely involved an argument between parties in a difficult relationship (see People v Murden, 190 AD2d at 822-823). Rather, an objectively reasonable excuse determined from the defendant’s viewpoint is one involving an immediately preceding event which provokes “an understandable human response deserving of mercy” (People v Harris, 95 NY2d at 318 [internal quotation marks omitted] [the male victim taunted the defendant about the victim’s past and potential future infidelities with the defendant’s girlfriend]; see People v Moye, 66 NY2d 887, 888-890 [1985] [the female victim mocked and taunted the defendant about his impotence]; compare People v White, 79 NY2d at 903 [objective element not established with proof of a temporally remote provocative act]).
*96 Our colleagues in the majority rely on People v Liebman (179 AD2d 245 [1992]), a case involving a defendant with longstanding mental illness, in which the Appellate Division, First Department, with one Justice dissenting, modified the conviction of murder in the second degree, after a nonjury trial, by reducing it to manslaughter in the first degree. However, that case is distinguishable for its markedly compelling evidence in support of the objective element. While the lengthy opinion in Liebman will not be repeated here, in essence, the defendant was utterly dependent emotionally and financially upon the victim, his wife, who controlled his money. At a time when the defendant’s “sanity hung in the balance,” he pleaded with her for inpatient hospitalization, and their argument reached such a pitch that the victim told the defendant his problems would be solved by taking an overdose of his medication (id. at 258). From the defendant Liebman’s perspective, his response was an understandable one, deserving of mercy. Here, by contrast, a jury of 12 rejected the defendant’s excuse that his emotional disturbance was triggered when his loving companion asked him, in a normal tone, if he was “crazy” for wanting to cancel the dinner party. Even considering this excuse in the context of the defendant’s months of problems, pressure, sleep deprivation, medication, depression, and anxiety, including the circumstances as the defendant believed them to be, we do not find this excuse or explanation to be a reasonable one from the viewpoint of a person in the defendant’s situation.
Nor does the holding in People v McKenzie (19 NY3d at 463) suggest that the defendant here met his burden of proof. In McKenzie, the Court of Appeals determined the significantly different issue of whether the trial court erred as a matter of law in denying the defendant’s request to charge the affirmative defense of extreme emotional disturbance. “In judging whether to accede to a defendant’s request to charge an affirmative defense, a court is bound to view the evidence in the light most favorable to the defendant, an exercise understood to be incompatible with weighing the evidence to resolve competing inferences” (id. at 466 [citation omitted]). Thus, “[t]he charge must be given if there is evidence reasonably supportive of the defense, even if there is other evidence which, if credited, would negate it” (id.). In McKenzie, the evidence with respect to the first, subjective element included “the sheer number and redundancy of the knife wounds” inflicted on the decedent, the defendant’s “inculpatory admissions to third parties, including *97 the police,” in which he stated that he had “ ‘snapped,’ ” and evidence of the “defendant’s appearance and demeanor consistent with his having been affectively disturbed in the assault’s near aftermath” (id. at 467-468). The evidence in support of the second, objective element presented a “closer question” (id. at 468) and included a heated argument in which the victim refused to have sexual relations with the defendant and told him she had been unfaithful with one of his friends in retaliation for the defendant’s similar conduct. The Court’s determination that this evidence, viewed in the light most favorable to the defendant, warranted submission of the affirmative defense to the jury does not control our determination here, which is based upon a full review of the record and the weighing of competing evidence and reasonable inferences flowing from the evidence.
Upon this full review, we find that the defendant failed to satisfy his burden of establishing by a preponderance of the evidence the second element of the affirmative defense of extreme emotional disturbance. In our view, the holding of the majority encroaches upon the jury’s function in making this “objective determination” (People v Cass, 18 NY3d at 561) by transforming the second element into a wholly subjective determination encompassing an excuse or triggering event peculiar to this defendant. Accordingly, we would hold that the jury’s verdict was not against the weight of the evidence and, as the defendant’s remaining contentions are without merit, affirm the defendant’s conviction of murder in the second degree (see People v Reynart, 71 AD3d 1057, 1057-1058 [2010]; People v Pallonetti, 62 AD3d 1027, 1028 [2009]; People v Ludwigsen, 48 AD3d 484 [2008]; People v Yong Ho Han, 200 AD2d at 781).
Dickerson and Austin, JJ., concur with Cohen, J.; Angiolillo, J.E, dissents in a separate opinion in which Balkin, J., concurs.
Ordered that the judgment is modified, on the facts, by reducing the defendant’s conviction of murder in the second degree to manslaughter in the first degree, and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the County Court, Westchester County, for resentencing.